UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THÉRÈSE HELLSTRÖM,<br><br>                           Plaintiff,<br><br>—against—<br><br>UNIBAIL-RODAMCO WESTFIELD, SE<br><br>                          Defendant. | Civil Action No.:   1:22-cv-01495<br><br>COMPLAINT |

**COMPLAINT AND JURY DEMAND**

Plaintiff Thérèse Hellström ("Plaintiff") brings the following claims of Lanham Act violations and New York Right of Publicity claims against Defendant Unibail-Rodamco Westfield ("Westfield or "Defendant").

**THE PARTIES**

1.  Plaintiff Thérèse Hellström is an individual with a permanent address in Lyckostigen 10a, 18356 Täby (Sweden).

2.  Upon information and belief, Defendant is a company with its headquarters at 7 place du Chancelier Adenauer, CS 31622, 75772 Paris Cedex 16.

**JURISDICTION AND VENUE**

3.  This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. §§1331, 1338(b), in that this action arises under the laws of the United States and, more specifically, Acts of Congress.

4. This Court also has subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. §§1332.

5. Upon information and belief, Defendant is subject to the personal jurisdiction of the Court because it resides, has agents, does or transacts business, or is otherwise found, and has purposefully availed itself of the privilege of doing business in the State of New York and this District.

6. Because, upon information and belief, Defendant resides, has a regular and established place of business, or may be found in this District, venue is proper in this District pursuant to 28 U.S.C. § 1400(a). Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District. Alternatively, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendant has a regular and established place of business in this District or may be found in this District.

## BACKGROUND FACTS

**Plaintiff Thérèse Hellström**

7. Ms. Hellström is a Paris-based fashion influencer, the Fashion Director for Custommade A/S, and a contributing Fashion Editor for Elle magazine Sweden. She works as the Fashion Director for Danish fashion brand Custommade and is a Fashion Writer for FORNI magazine Sweden. Ms. Hellström is also a brand consultant/advisory board member for brands. Ms. Hellström talks about fashion trends in one of Sweden's biggest TV-programs called "Nyhetsmorgon." Ms. Hellström has an Instagram account in the name of @tesshell with more than 90,000 followers. One can see Ms. Hellström on the best street style images from Fashion

weeks all over Europe in Vogue and Harpers Bazaar. Ms. Hellström is known for her colorful and chic style. She has her own blog owned by ELLE Sweden (www.theresehellstrom.elle.se).

8.      Ms. Hellström earns an important part of her living by licensing her image, and she is therefore exceedingly cautious about the brands and enterprises with which she associates herself. Electing to work with certain brands or enterprises prevent her from working with others, such as competitors of those brands. Also, she must carefully navigate her business relationships in a manner that considers her very public role as a fashion editor at a leading magazine. Ms. Hellström collaborates with many high-end brands, who care deeply about her portfolio and where she is seen. Because Ms. Hellström works with brands and companies on social media (on a long term paid basis), her photos cannot be used without her agreement. It is therefore critical for Ms. Hellström's professional reputation how she is portrayed in terms of look, clothing, and exposure.

## WESTFIELD'S INFRINGING ACTS

**Westfield's Commercial Use of Thérèse Hellström's Image**

9.      The photograph at issue is entitled "Day 1 – Street Style – Stockholm Fashion Week Digital Edition 2020" (the "Hellström Image"), which is available on Getty Images, with a proper license, for editorial use only (Ex. A). The clear terms on Getty specifically exclude commercial use, and more specifically the precise digital use employed by Westfield here. On the Getty web site under the designation "How can I use this image," (Ex. A), Getty states:

> Can't be used for:
> Book or magazine covers, commercial, promotional, advertorial, endorsement, advertising, or merchandising purposes in any media
> (e.g. print, commercial broadcast, film, digital)
> On the Getty website, it identifies the license type as "Rights-Managed" and provides a link to more information. Within that link, it states, inter alia:
> 3. Restricted Uses.

3

> Restricted Uses - unless additional license purchased. The following are prohibited without the prior written consent of Getty Images and payment of an additional license fee:
> g. No Commercial Use of Editorial Content. Unless explicitly authorized in a Getty Images invoice, sales order confirmation or license agreement, you may not use content marked "editorial" for any commercial, promotional, advertorial, endorsement, advertising, gambling/betting/gaming uses, or merchandising purpose. This type of content is not model or property released and is primarily intended to be used for editorial purposes, meaning descriptive purposes such as news reporting and discussion of current events or other human interest topics. In addition, pursuant to section
> 9.c below, you are responsible for obtaining any necessary approvals
> from third parties such as individuals featured or event organizers before using "editorial" content for a commercial purpose.

Ex. B. Westfield did not even have an editorial license for the uses at issue, much less the appropriate commercial license it would need. Moreover, had Westfield wanted to use Ms. Hellström's image for commercial purposes, it would have had to obtain an appropriate license from Ms. Hellström directly. It did not even attempt to do so. Getty's use of the Hellström Image for commercial purposes has been extensive and brazen, as reflected on the attached Exhibit C.

10.     Westfield has displayed the Hellström Image on multiple digital screens throughout Towers 1, 3, and 4 of the World Trade Center and in various corridors. Ms. Hellström's image appears every two minutes on each of the 19 screens, resulting in untold impressions, likely in the millions. Particularly upsetting for Ms. Hellström, there is a life size image of Thérèse Hellström on one of the pillars. Ex. D.

11.     Accompanying the Hellström Image, are also advertisements for a Chase bank debit card and Caesars sports betting. Westfield touts the visibility of its screens at the World Trade Center by stating on its website:

> 26,000 Sq. Ft. 14 Million Annual Visitors 40 Minute Average
> Visit Time 400,000 Visitors a Day 19 Modern Digital Screens

4

NBC's Senior Vice President of Media states:

> It's about the length of a football field; it's absolutely insane. In my
> whole media career, I've never has such a canvas or platform where we could bring a show to life, and that's really what we're doing versus having a static billboard or even a digital static billboard. This is full motion. You could charge people admission – it's that good https://www.anc.com/projects/westfield-world-trade-center.

12. In a piece shown on Billboard Insider, Westfield states:

> How big of an out of home and media presence can Westfield deliver and on what kinds of screens?
> . . . In lower Manhattan, we run our "NYC+ Network" which is comprised of more than 70 high-impact digital canvases across Westfield World Trade Center and The Fulton Center – offering advertisers the opportunity to dominate two of the biggest transit centers in the city. We offer advertisers up to 60 million real-time impressions during a four-week time period across The Westfield Network, in addition to engaging with a global and local audience of residents, commuters and visitors on our NYC+ network.

Ex. E.

13. Westfield states:

> More than 400 brands in leading consumer retail, luxury, entertainment, and telecom have advertised on the network to date. The highest profile sites are, arguably, the World Trade Center in NYC and Century City in LA.

Ex. F. Westfield also states that it counts an impression based on the people that are exposed to the display. Westfield states:

> IMPRESSIONS = REAL PEOPLE, NOT DEVICES
> Consumers who are onsite and within 20ft. of a screen are counted as a qualified impression.

Ex. G.

14.	In short, by Westfield's own admissions and the observations of those in the industry, Westfield's advertising space is unprecedented in both size, scope, and exposure. Accordingly, its use of Ms. Hellström's Image is particularly comprehensive and the endless two-minute portrayal of her image in an endless loop of infringement has been particularly damaging.

**Westfield's Ongoing Infringement and Cavalier Attitude About Ms. Hellström's Rights**

15.	Aside from the clear infringement of Ms. Hellström's rights under New York's Right of Privacy statute and Section 43 of the Lanham Act, enhanced damages are called for here, for the following reasons: First, while a successful media outlet, Westfield is not a brand Ms. Hellström would have chosen to be associated with. Ms. Hellström works exclusively with high-end brands such as Hermès and Dior Beauty. Westfield's unauthorized use of Ms. Hellström's Image has taken from her the right to control her image in the manner she deems appropriate.

16.	Second, the other advertisements that precede and follow her image are also something she would never approve of, namely, for example, advertisements for sports betting and bank debit cards. Westfield's decision to place Ms. Hellström's Image next to ads for sports betting and debit cards is particularly damaging and egregious.

17.	Third, Westfield's uses of Ms. Hellström's Image are particularly prominent, and in at least one instance, provocative and shows Ms. Hellström's full body in a manner she would have never approved.

18.	Fourth, Ms. Hellström has an exclusive contract with a Danish fashion brand, where she works as a Fashion Director. Westfield's unauthorized use of Ms. Hellström's image in such large spaces, wearing fashion pieces from other brands, is inconsistent with the terms of that exclusive contract, putting her in risk of breach and losing that business opportunity. Finally,

Westfield's infringements are damaging to Ms. Hellström's personal brand and damaging to her relationships as fashion editor for ELLE magazine.

19. Ms. Hellström is traumatized by Westfield's brazen and unauthorized use of her image. Ms. Hellström is traumatized because she has spent her entire career building a certain look and image, and relationships, which Westfield has so brazenly damaged, causing her great financial damage. Because Westfield is perhaps the most sophisticated company in the United States when it comes to advertising, and the rights and releases that are required in connection therewith, the infringements here are either intentional or grossly negligent in the extreme, entitling Ms. Hellström to exemplary damages under New York law.

**Westfield's Continuing Concealment of its Infringing Acts Has Been Egregious and Further Justifies Exemplary and Punitive Damages Here**

20. By letter dated January 31, 2022, Ms. Hellström demanded that Westfield immediately remove her image from all Westfield Digital Displays within one business day and explain to her the nature and extent of its use of her image.

21. It was not until February 9, 2022 that Westfield's outside counsel notified Ms. Hellström that it would handle the matter and it was not until February 15, 2022, that outside counsel for Westfield responded to Ms. Hellström's letter.

22. To date, Westfield affirmatively conceals and refuses to explain where and when it used her image, except under certain unacceptable conditions. Westfield's continued display of disrespect for Ms. Hellström's rights and feelings about Westfield's unauthorized use of her image ensured this litigation.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF NEW YORK CIVIL RIGHTS LAW §50 and §51

23. New York Civil Rights Law § 50 and 51 specifically proscribe the use of an individual's name, portrait or picture for trade or advertising purposes, without the prior written consent of that individual.

24. The New York Civil Rights Law § 51 provides *inter alia*, that compensatory and exemplary damages are recoverable thereunder.

25. Section 50 of the New York Civil Rights Law evidences a strong public policy against such unauthorized use, defining any such offense as a *misdemeanor*.

*26.* Section 51 of the New York Civil Rights Law enumerates civil remedies available thereunder including but not limited to money damages in the form of compensatory and/or exemplary damages and injunctive relief.

27. Defendant's use of Plaintiff's image and likeness violates New York Civil Rights Law § 50, 51 because there existed/exists no executed written consent to the specific uses complained of herein.

28. Defendant's uses of Plaintiff's image and likenesses is in direct violation of the New York Civil Rights Law § 50, 51 because Defendant failed to possess an executed written consent prior to any use by Defendant of the Plaintiff's images and likeness.

29. Defendant had actual knowledge that it had no authorization, consent or license from the Plaintiff to use her image and likeness for trade or advertising purposes.

30. Notwithstanding such knowledge, Defendant employed Plaintiff's image and likeness, knowingly, in violation of law.

31. As a result of the foregoing, Plaintiff has been damaged and is entitled to relief as per statute in the forms of compensatory damages, in a sum to be determined by this Court, plus punitive or exemplary damages in a sum no less than two million dollars with costs and disbursements incurred by Plaintiff in the prosecution of this action, together with an Order from this Court permanently restraining the Defendant herein from utilizing the name, image or likeness of the Plaintiff for any trade or advertising purposes.

## SECOND CAUSE OF ACTION

### (VIOLATION OF §43(a) OF THE LANHAM ACT (15 U.S.C. 1125))

32. Defendant has employed Plaintiff's image, likenesses, and persona extensively and in advertising campaigns for well-known products and marks.

33. Plaintiff is recognizable to segments of the public in the United States, and in particular, to those in the fashion industry.

34. Defendant's use of Plaintiff's image and likeness was aimed at promoting the products in Defendant's fashion malls.

35. Defendant has employed Plaintiff's image, likenesses and persona on multiple digital displays throughout at least the World Trade Center, and possibly elsewhere, but Defendant refuses to provide that information.

36. Defendant has employed Plaintiff's image, likeness and persona in massive advertising campaigns for its stores.

37. The persons viewing the Defendant's uses of Plaintiff's image, likeness, and personas are persons who are aware of Plaintiff's image, likeness, and persona.

38. Defendant intentionally traded on Plaintiff's fame and notoriety.

39. As a result of Defendant's unauthorized uses of Plaintiff's image, likeness, and persona, Plaintiff was made to appear as if she endorses Westfield, the stores in the Westfield plaza, and the products contained therein.

40. Plaintiff has entered into agreements for the use of her image in advertisements with competitors of some of the brands for products sold in the Westfield Plaza.

41. Plaintiff has been injured because of Defendant's unauthorized use of Plaintiffs' image, likeness, and persona.

42. That the foregoing false endorsements constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

43. As a result of the foregoing, Plaintiff has been damaged and is entitled to relief as per statute under 15 U.S.C. §1117 and in the forms of compensatory damages, inclusive of defendant's profits, any damages sustained by the Plaintiff, attorneys' fees, costs and disbursements incurred by Plaintiff in the prosecution of this action, together with an Order from this Court pursuant to 15 U.S.C. §1116 permanently restraining the Defendant from utilizing the image, likenesses and persona of Plaintiff for commercial purposes her consent.

Dated: February 23, 2022
New York, New York

Respectfully Submitted,

THE SERBAGI LAW FIRM, P.C.

By: /Christopher Serbagi/
Christopher Serbagi, Esq.
488 Madison Avenue, Suite 1120
New York, New York 10022
Tel: (212) 593-2112
Fax: (212) 308 8582
*Attorney for Plaintiff*